IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSHUA J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-374 |
| | ) |
| KILOLO KIJAKAZI[2] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Joshua J. ("Joshua") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Joshua argues that the Administrative Law Judge ("ALJ") erred by failing to properly (1) determine his physical residual functional capacity ("RFC") using a function-by-function analysis and (2) assess his allegations regarding his symptoms. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Joshua's Motion for Summary Judgment (Dkt. 15).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Joshua failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Joshua filed for SSI on July 5, 2016, alleging disability beginning on July 5, 2016,[4] due to low back pain, limp and altered gait causing balance problems, constant pain in right foot, circulation problem in right leg and foot, swelling in right foot, tingling feeling in hands, anxiety, severe fatigue, insomnia, and daily headaches. R. 15, 190, 209. The state agency denied Joshua's application at the initial and reconsideration levels of administrative review. R. 51–61, 62–73.

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Joshua amended his disability onset date from May 20, 2013 to July 5, 2016 during his hearing. R. 34.

The relevant period for Joshua's SSI claim is from his July 15, 2016 application date through the ALJ's decision on April 29, 2019. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date he files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month he satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed). On February 6, 2019, ALJ David Lewandowski held a hearing to consider Joshua's claim. R. 30–49. Counsel represented Joshua at the hearing, which included testimony from vocational expert Barry Hensley. On April 29, 2019, the ALJ entered his decision analyzing Joshua's claim under the familiar five-step process[5] and denying his claim for SSI benefits. R. 15–25.

The ALJ found that Joshua had not engaged in substantial gainful activity since July 5, 2016, the application date. R. 17. The ALJ determined that Joshua suffered from severe impairments of obesity, hypertension, diabetes, and chest pain. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19. The ALJ found that Joshua had no severe mental impairment. R. 17–19.

The ALJ concluded that Joshua retained the RFC to perform medium work, except that he can frequently climb. R. 19. He is expected to be off task less than 15 percent each day. Id. The ALJ found that Joshua could not perform his past relevant work as a tree trimmer. R. 23.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the Claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

However, Joshua could perform other jobs that exist in significant numbers in the national economy, such as brewery worker, production helper, and hand packer. R. 24. Thus, the ALJ determined that Joshua was not disabled. R. 25. Joshua appealed the ALJ's decision, and the Appeals Council denied his request for review on April 29, 2020. R. 1–6. This appeal followed.

## ANALYSIS

Joshua alleges that the ALJ failed to properly (1) determine his physical RFC using a function-by-function analysis and (2) assess his allegations regarding his symptoms.

### A. Medical History

1. Treatment History

Joshua occasionally complained of pain in his chest, right foot, and abdomen prior to the relevant period and regularly reported to the emergency room for random complaints such as body numbness and drug and alcohol interaction. Pl. Br. at 4–6, Dkt. 16.

On July 12, 2016, Joshua visited the emergency room for flu-like symptoms and was hospitalized until July 25, 2016 with sepsis and bilateral community-acquired pneumonia. R. 447–462. On July 27, 2016, Joshua returned to the emergency room and complained of chest, back, and abdomen pain that persisted from his recent hospital release. R. 426. John T. Hansbarger, M.D. advised Joshua to continue taking his antibiotics. R. 433.

Throughout 2016 to 2017, Joshua periodically saw Dr. Hansbarger about his ongoing cough and fatigue related to pneumonia (R. 510, 980), blood pressure (R. 695), and type-II diabetes that was controlled by diet (R. 503, 698). Dr. Hansbarger regularly diagnosed Joshua with benign essential hypertension, resolving pneumonia, hypercholesterolemia, obesity, and diabetes controlled by his diet. See R. 508, 698, 983. On June 21, 2017, Joshua reported to Dr. Hansbarger that he discontinued taking Lisinopril three weeks earlier because it made him tired.

R. 695. Joshua also complained of snoring at night and indicated that he was anxious about his medical conditions (R. 695–96), in which Dr. Hansbarger referred him for a sleep study. R. 698. Dr. Hansbarger saw Joshua on August 1, 2016 and October 24, 2017 advising him to lose weight and continue his medicine regimen. R. 513, 983. On October 24, 2017, Joshua saw Dr. Hansbarger complaining of fatigue and not feeling well since having pneumonia the previous year. R. 980. Dr. Hansbarger found that Joshua had benign essential hypertension and obesity and needed to monitor his diet and exercise. R. 983.

On February 15, 2017, Joshua saw Dr. Hansbarger complaining of pain in his left foot after kicking something the previous day. R. 491. X-rays of Joshua's left foot showed degenerative changes of the first MTP joint. R. 493. Dr. Hansbarger reported a foot contusion and advised Joshua to elevate his left leg and reduce physical activity. Id. On February 17, 2017, Joshua went to the emergency department complaining of pain, swelling, and redness in his left big toe and was advised to use crutches and received treatment for gout. R. 535–41.

Joshua regularly went to the emergency room complaining of chest pain and shortness of breath. Specifically, on May 21, 2017, Joshua went to the emergency room complaining of chest pain and shortness of breath that had persisted for a month and increased over the previous week. R. 744, 747. Joshua's chest X-rays showed no evidence of acute or active process and was unchanged from his previous x-rays. R. 752. Edmund Sciullo, D.O. diagnosed Joshua with atypical chest pain. R. 752, 754. On October 9, 2017, Joshua returned to the emergency room with complaints of chest pain that had increased in frequency over the previous two weeks. R. 882. He also complained of numbness in both hands and burning pain in his left thigh. Id. Paul Offermann, M.D. diagnosed Joshua with chest pain, elevated liver function tests, and paresthesia. R. 887–88.

On December 3, 2017, Joshua went to the emergency room complaining of atraumatic pain and swelling in his left elbow and wrist that began the previous day. R. 763, 765. Joshua's left elbow was swollen, tender, and warm with reduced range of motion due to pain, but there were no significant findings with respect to his left wrist. R. 767. Paul Gohlke, M.D. diagnosed Joshua with inflammatory arthritis. R. 769.

Joshua saw Tina Howard, FNP-BC on May 31, 2018 with complaints of fatigue, headache, and blurred vision when his blood pressure is elevated, muscle spasms in the left side of his neck, swelling in his feet, increased thirst, numbness over the lateral aspect of his left thigh, and numbness and tingling in his hands. R. 965. Ms. Howard regularly saw Joshua during May 2018 to manage his blood pressure advising him to exercise and reduce his caloric intake to lose weight. R. 962, 969, 971. Ms. Howard adjusted his blood pressure medication and recommended that he obtain a home blood pressure kit and take readings twice a day. R. 963. On June 27, 2018, Joshua maintained that he was not tolerating blood pressure medications. R. 952–53. Ms. Howard prescribed Metformin and counseled Joshua about the importance of diet and exercise in controlling his essential hypertension and prediabetes. R. 956–57.

On August 8, 2018, Joshua went to the emergency room complaining of constant left-sided neck pain with radiation to his left arm that began the previous day and was associated with chest pain and difficulty swallowing. R. 826. He also had difficulty with urination that had persisted for two months, abdominal tenderness, sore throat, and shortness of breath. R. 827. Dr. Offermann diagnosed Joshua with viral pharyngitis, and he was discharged in stable condition with ibuprofen and instructions to follow up with his primary care physician. R. 833–34.

On October 2, 2018, Joshua saw Ms. Howard for a prediabetes and hypertension check-up. R. 946. Again, Joshua reported that he stopped taking his medication after a few days due to

abdominal pain and headache. Id. Ms. Howard advised Joshua to re-start Metformin for prediabetes and begin an exercise program. R. 949.

On November 14, 2018, Dr. Hansbarger referred Joshua to cardiologist Kartik Shatagopam, M.D., for evaluation. R. 1022. Joshua saw Dr. Shatogopam on November 28, 2018 with complaints of chest pain that had persisted for about a year along with some lightheadedness and dyspnea and occasional left arm numbness. R. 1023. Dr. Shatagopam's diagnosed Joshua with unspecified chest pain and referred him for an exercise treadmill echocardiogram. R. 1024–25. Joshua stress test completed on November 28, 2018 was negative. R. 1053–54.

On December 5, 2018, Joshua saw Ms. Howard complaining of shortness of breath on exertion with pain in his back and side, wheezing, fatigue, headache, congestion, left ear discomfort, sore throat, and cough. R. 1042. Ms. Howard assessed acute sinusitis and cough, and Joshua was treated with nebulized Albuterol and prescribed an inhaler to use as needed for shortness of breath and wheezing. R. 1045–46.

2. Medical Opinion Evidence

On April 17, 2017, state agency physician Bert Spetzler, M.D., reviewed Joshua's records and determined that his obesity, essential hypertension, and diabetes mellitus are severe impairments. R. 55. Dr. Spetzler found that Joshua could frequently lift and/or carry 25 pounds, occasionally lift and/or carry 50 pounds, sit about 6 hours in an 8-hour workday, or stand and/or walkabout 6 hours in an 8-hour workday. R. 57. Dr. Spetzler indicated that Joshua had no manipulative, visual, communicative, or environmental limitations, and that he had no postural limitations apart from a restriction to no more than frequent climbing of ramps, stairs, ladders, ropes, and scaffolds. R. 58. Similarly, on April 18, 2017, state agency psychologist Andrew

Bockner, Ph.D., reviewed Joshua's records and determined that he did not have a medically determinable mental impairment. R. 55.

On October 5, 2017, state agency physician Robert McGuffin, M.D., reviewed Joshua's records and determined that his obesity and essential hypertension were severe impairments, but his gout was not a severe impairment. R. 66, 69. Dr. McGuffin determined that Joshua could frequently lift and/or carry 25 pounds, occasionally lift and/or carry 50 pounds, sit about 6 hours in an 8-hour workday, or stand and/or walk about 6 hours in an 8-hour workday. R. 68–69. Dr. McGuffin indicated that Joshua has no manipulative visual, communicative, or environmental limitations, and that he has no postural limitations apart from a restriction to no more than frequent climbing of ramps, stairs, ladders, ropes, and scaffolds. R. 69. Similarly, on October 5, 2017, state agency psychiatrist Jo McClain, Psy. D. determined that Joshua does not have a medially determinable mental impairment. R. 67.

### A.  Physical RFC and Function-by-Function Analysis

Joshua argues that the ALJ insufficiently explained his conclusion that Joshua can perform medium work as defined in 20 C.F.R. § 416.967(c), except that he can climb frequently, and would be off task less than 15% of the workday. R. 23; Pl. Br. 15–18, Dkt. 16. Joshua asserts that he would be off task more than 15% due to his elevated blood pressure, chest pain, and other medical impairments listed above. Pl. Br. at 17. Specifically, Joshua argues that the ALJ made conclusory statements and failed to make specific findings regarding whether his impairments would cause him to experience episodes of pain, fatigue, or dizziness necessitating breaks and how often those breaks would occur. Pl. Br. at 16–17. Joshua further asserts that the ALJ failed to provide a narrative discussion and "does not build a logical bridge between the evidence and his physical RFC findings as required by SSR 96-8p." Pl. Br. at 17.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).[6] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. The ALJ summarized the medical evidence and the hearing testimony and cited to specific exhibits and page numbers. R. 19–23. The ALJ noted that although the state agency medical consultants were non-examining medical sources, their opinions deserved some weight because they have a high level of understanding of the Social Security disability program and had the opportunity to review all the available evidence in the record when forming their opinions, rather than the records of only one treating practitioner. R. 23. The ALJ further explained that the record showed that Joshua had high blood pressure throughout the period of review, but there were some notations indicating that he was noncompliant with his medications, and that despite complaints of significant fatigue, dizziness, and pain, his treatment providers did not note objective findings that would support his allegations. Id. The ALJ also stated that Joshua's cardiac workups were generally within normal limits, and that he been treated for diabetes and

had a BMI in the mid-40s. Id. The ALJ determined that, due to Joshua's testimony regarding fatigue and dizziness, he would be off task less than 15% of the workday. Id.

The ALJ noted that Joshua had alleged chest pain with shortness of breath and was diagnosed with pneumonia. R. 22. Joshua had several visits addressing his chest pain with multiple physicians including Dr. Hansbarger, Dr. Offermann, Dr. Shatagopam, and Ms. Howard. See R. 426, 822, 826, 887, 977–79, 1023–25. Dr. Offermann noted that Joshua's chest X-rays showed resolving bilateral pneumonia. R. 435. Joshua was also evaluated by cardiologist Dr. Shatagopam who did not find anything significant. R 22, 1028, 1058. The ALJ observed that although Joshua complained of chest pain, there was no definitive diagnosis or treatment. R. 22. The ALJ recognized that Joshua had a BMI in the mid-40s, which could impact his ability to work and concluded that a restriction to medium exertion work with only frequent climbing accounted for any adverse effects of his obesity. Id. In May 2018, Ms. Howard recommended that Joshua lose weight, follow a healthy diet, and exercise to address his diabetes. In July 2018, she found Joshua's diabetes under good control with medication R. 22, 956.

The ALJ also found that the record generally consisted of only acute episodes or minor findings. R. 22. Although Joshua complained of chest pain, shortness of breath, and fatigue, the record did not reflect that those conditions caused significant work-related limitations. The ALJ accommodated Joshua's symptoms by providing that he would be off task less than 15% of the workday. Id. Further, the ALJ noted that despite Joshua's denial that he worked after July 2016, Joshua requested and received a work excuse in February 2017 due to strep throat. R. 22, 36, 498. Ms. Howard continued to note that Joshua was working in May 2018. R. 22, 974. Joshua's treatment notes also indicate he was able to walk in the woods. R. 22, 975.

Accordingly, the ALJ adequately explained how he arrived at Joshua's RFC findings and provided an accurate and logical bridge between the evidence and the findings as required in SSR 96-8p.

### B. Subjective Allegations

Joshua asserts that the ALJ's decision regarding his allegations is not supported by substantial evidence and should be rejected as erroneously insufficient. Pl. Br. at 18–19. Joshua contends that his allegations, the intensity, persistence and limiting effects of his symptoms (R. 22–23), were not fully accepted and the ALJ failed to "build a logical bridge between the evidence and his findings." Id. at 19. As discussed above, the ALJ did not ignore the objective evidence in the record related to his elevated blood pressure. See e.g., R. 695–696, 882, 887, 1024. Joshua does not identify any subjective complaints or treatment records that the ALJ failed to consider. Nor does Joshua identify specific instances where the ALJ improperly applied the legal standards. Rather, Joshua asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the province of this court.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion includes a detailed discussion of Joshua's medical history, including Joshua's allegations, and the ALJ adequately supported his findings that Joshua's allegations were not entirely consistent with the medical evidence and other evidence in the record. R. 19–23. The ALJ adequately considered Joshua's allegations of fatigue, headache, and blurred vision when his blood pressure is elevated. The ALJ addressed Joshua's medical visits that resulted in the lack of definitive diagnosis, or which could be remedied with medication. R. 22. Specifically, the ALJ noted that Joshua "complained of chest pain, shortness of breath, and fatigue and reported that he had not felt well since his pneumonia. However, the record does not provide specific findings for these conditions to show that they created significant limitations." Id. Further, the ALJ noted Joshua's noncompliance with his prescribed medicine which could remedy his alleged symptoms. R. 23. In fact, the ALJ accommodated Joshua's testimony regarding his conditions and claims of fatigue and dizziness by finding that Joshua would be off task less than 15% of the work day. R. 22–23.

This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Joshua's subjective complaints with substantial evidence and that Joshua is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Joshua's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 11, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge